## APPEAL OF THE HUB, INC.

Docket Nos. 3553, 3554.  Submitted October 11, 1925.  Decided April 19, 1926.

1. Value of leasehold determined.
2. An oral assignment of a leasehold interest in real estate is voidable, and not void, and where the parties have recognized the assignment as valid, it can not be attacked by a third party.

James W. Ewing, W. D. Jamieson, and Harry Friedman, Esqs., for the taxpayer.
Robert A. Littleton, Esq., for the Commissioner.

### Before GRAUPNER, TRAMMELL, and PHILLIPS.

Taxpayer appeals from the determination of deficiencies of $9,397.01 and $8,725.26, income and profits taxes for the fiscal years ended January 31, 1920, and January 31, 1921, respectively. The taxpayer alleges that the Commissioner committed error in refusing to allow as paid-in surplus the value of a leasehold acquired by the taxpayer as a gift from its principal stockholder, and in disallowing as a deduction from gross income for each of the years concerned an allowance for exhaustion of such leasehold. The questions involved are identical as to each of the appeals, and at the hearing the appeals were consolidated. .

#### FINDINGS OF FACT.

The taxpayer is a West Virginia corporation with its principal office at Wheeling.

In or about the year 1893, one Fridenberg acquired the lot and building on the northeast corner of Market and Fourteenth Streets, in the City of Wheeling. Fridenberg was not a resident of Wheeling and the property was called to his attention by one Sonneborn,

the husband of Fridenberg's youngest sister. Some time prior to 1906, Sonneborn entered into the possession of the property for the purpose of conducting a department store, and placed on the property improvements costing between $50,000 and $60,000. In 1906 the taxpayer was organized and the business was transferred to it, Sonneborn becoming and remaining the principal stockholder. During the years involved, Sonneborn owned approximately 75 per cent and additional stock was owned by his sons.

In 1906 Sonneborn obtained a lease upon said premises at the annual rental of $4,800. This lease was not assigned to the taxpayer, which occupied the premises as a subtenant and paid Sonneborn rental at the rate of $10,000 per year. This lease expired on March 31, 1912. Under date of August 26, 1912, a lease of these premises was entered into between Fridenberg and Sonneborn, effective for a period of 15 years from April 1, 1912, at an annual rental of $10,000, payable quarterly. Shortly after the execution and delivery of such lease, and on or about April 1, 1913, Sonneborn delivered the lease to his son, an officer of the taxpayer, on behalf of the corporation, making an oral assignment thereof to the corporation, and it was placed in its safe. From and after April 1, 1913, all rental becoming due under the lease was paid by the taxpayer directly to Fridenberg.

The premises were well located in the principal shopping district of Wheeling, and on April 1, 1913, the lease had a fair market value of $42,000.

OPINION.

PHILLIPS: Both parties appear to concede the fact that the lease acquired by Sonneborn in 1912 was acquired by him in his individual capacity and not as a representative of the corporation of which he was president. Prior to that time the taxpayer had been his tenant, and there is nothing that would justify us in reaching any conclusion other than that this lease was taken by Sonneborn individually. The testimony is to the effect that Fridenberg declined to make the lease with the corporation, desiring to have the personal responsibility of Sonneborn. The two questions presented are whether any assignment of the lease was made by Sonneborn to the taxpayer and, if so, what value, if any, it had at the time of such assignment.

We are satisfied from the evidence that an assignment to the taxpayer took place on or about April 1, 1913. This assignment was oral, but the taxpayer was in possession of the property and the oral testimony that such an assignment took place is supported by canceled checks showing that, after April 1, 1913, the payments were made by the taxpayer directly to Fridenberg, whereas, prior

to that time, the payments were made to Sonneborn and by him to Fridenberg. It is the contention of the Commissioner that such oral assignment is void under the statute of frauds. It is sufficient to point out that, at most, such assignment was voidable only, and, the parties having recognized the assignment as valid, its validity can not be attacked by a third party. See discussion in the opinion in the *Appeal of Denholm & McKay Co.*, 2 B. T. A. 444.

The more difficult question is the value to be assigned to the lease at the date of transfer to the taxpayer. It is taxpayer's contention that the premises had a rental value of over $20,000 a year at the time the lease was made providing for a rental of $10,000 per year, and upon that basis taxpayer claims a value of $150,000. Much expert testimony was introduced, including testimony concerning other rentals at the same time in the same neighborhood and for approximately the same term. To our mind the record conclusively establishes that the property should have rented, on a 15-year lease, for a sum substantially in excess of the rental fixed in the lease, and certainly for at least $15,000 per year over the 15-year term. At the time of the assignment to the taxpayer the lease had 14 years to run. The present value of a payment of $5,000 per year over a period of 14 years is approximately $42,000, which we have found to be the reasonable value of the lease at the time it was assigned to the taxpayer.

Why the landlord should have been willing to make the lease at an amount so much less than the actual rental value is a question which has received serious consideration. He was a resident of Philadelphia and not familiar with property in Wheeling. The property was purchased by him for about $75,000 during the panic of 1893, upon the advice of Sonneborn, and proved to be an exceptionally attractive investment. Sonneborn had spent between $50,000 and $60,000 in improving the premises. The lessor was in a position to lease the property at a net rental of $10,000 per year and obtain a return of approximately 15 per cent upon the investment made by him in 1893. Considering these factors and the family relationship existing, it is not improbable that he was willing to lease it to Sonneborn for a sum which was less than could have been obtained from others, but, whatever may have been the motives which actuated the lessor, the taxpayer has established that the rental was much less than was being paid at the time for other similar property. On the other hand, we are not willing to accept those opinions which take into consideration the probability of an increase in rental value after 1912. It is quite possible that in 1912 it could have been foreseen that the rental value of the property would increase within the next 15 years, but, under the unusual circumstances in this appeal, we feel that the value to be

attached to the lease should be confined to the circumstances actually existing in 1912 and 1913.

The taxpayer is entitled to include the $42,000 value of the leasehold in its invested capital, but earned surplus must be reduced by the pro rata exhaustion of such value to the beginning of each of the taxable years. In computing its income it is also entitled to a deduction of $3,000 for each of the years for exhaustion of the leasehold.

*Order of redetermination will be entered on 10 days' notice, under Rule 50.*