R. H. PERRY & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9467.   Promulgated June 4, 1928.

*George R. Shields, Esq.,* and *John W. Enright, Esq.,* for the petitioner.

*C. H. Curl, Esq.,* for the respondent.

## OPINION.

TRUSSELL. Section 331 of the Revenue Act of 1918 provides:

In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum, or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received.

By the organization of petitioner and the acquisition of the properties here involved, there was no reorganization or consolidation effected of the several interested corporations. Petitioner merely acquired from each of six separate corporations fixed assets and cash in various amounts, together with good will and other intangibles, and for these, in each case, it issued its capital stock. As a result of these transfers none of the selling corporations received as much as 50 per cent of the issued stock of petitioner. The selling corporations were in no way affiliated.

Respondent argues that under such conditions the interests acquired in the purchasing corporation by the individual owners of the separate properties conveyed should be combined, and if the sum total amounts to a 50 per cent interest or control, then the limitation on invested capital provided by section 331 applies. To this construction we do not agree. Section 331, quoted above, applies to instances of individual acquirement of "*a trade or business*" or individual "*change of ownership of property*" in the sense that the business or property, as the case may be, is acquired from one owner or several joint owners. It is clear to us that Congress by this provision intended to restrict those reorganizations or consolidations effected, or transfers of property made, with the intent of capitalizing unrealized appreciation in asset values, and provided, in effect, the test for such intent to be the *retaining* of an interest or control of 50 per cent or more in the property conveyed. In those cases where the former owner or owners of the particular property was willing to surrender the interest or control of 50 per cent or more which he or they theretofore held in the property, the limitation on invested capital would not apply.

The construction which respondent places on the section quoted would lead to results which, in our opinion, were never contemplated.

For instance, a corporation which purchased assets of a determinable value from another for 49 per cent of its capital stock, and thereupon was entitled to include that value in its invested capital, might lose such right if it subsequently purchased from another corporation an asset for 1 per cent of its stock; or a corporation purchasing assets from each of 50 corporations, in a similar number of transactions, for 1 per cent of its stock in each case, might be denied the inclusion in its invested capital of the values so acquired. The conclusion that the restriction sought to be imposed by Congress in enacting section 331 was never intended to apply to such transactions, does not require argument.

Our conclusion that the limitation on invested capital provided by section 331 does not apply in this case does not, however, permit the inclusion in petitioner's invested capital of any amount on account of the intangible assets acquired for stock. No cost to the former owners is shown for these assets and the evidence in the record is insufficient for us to determine their actual value. The resolution by petitioner's board of directors declaring them to have a certain value and their entry on the books of the company in that amount is not proof of that fact. *W. E. Marshall & Co.*, 1 B. T. A. 175.

The only additional evidence as to value of these assets is the testimony of the secretary of petitioner who gave it as his opinion that they were worth in excess of the amount entered on the books, based on the productive earnings of the corporation for the 10 months of operation following their acquisition, but we are unwilling to find a value on the basis of earnings for a short period which may have resulted from a purely temporary condition and not be representative of the regular and average income producing value of the assets.

It appears, however, that in the amount of $474,814.11, eliminated from invested capital by the respondent, there is included the amount of $45,163.30, which was paid in to and became the property of the petitioner as a part of the capital transactions taking place at the time the petitioner was organized; that this amount of cash was intact in the treasury of the petitioner on March 1, 1920, when the petitioner began business.

The circumstances of these transactions were that E. L. Young & Co., one of the organizers of petitioner, had certain intangible assets value in the organization at $45,163.30, and for which petitioner agreed to issue 1,863 shares of its no par value common stock. Prior to organization of petitioner, Burns Brothers, another of the organizers of petitioner, agreed to purchase these assets for $45,163.30 in cash. Contracts were executed by these two parties, one to turn over these assets to petitioner when organized and the other to pay peti-

tioner for them the amount stated. Before any stock was issued petitioner stood bound to accept these assets from E. L. Young & Co. and deliver them to Burns Brothers for cash.

The performance of these contracts were incidents of the one general transaction of organization of petitioner, carried out in one day, and at the conclusion thereof petitioner was possessed of certain tangible assets and cash representing the investments of the several constituent companies, and for which its capital stock was issued as follows:

| | | |
|---|---:|---:|
| Fixed assets contributed by five constituent companies | $305, 567. 22 | |
| Wertheim Yards (Young & Co.) | 27, 491. 88 | |
| Total | 333, 059. 10 | |
| Less: Tangible assets transferred to Burns Bros | 27, 144. 43 | |
| Total | | $305, 914. 67 |
| Cash contributed by constituent companies and underwriters | $191, 932. 78 | |
| Cash paid in by Burns Bros. for Young & Co. New York fixed assets | 27, 144. 43 | |
| Cash paid in by Burns Bros. for transfer of Young & Co.'s New York tonnage | 45, 163. 30 | |
| Total | 264, 240. 51 | |
| Less: Credit allowed E. L. Young & Co. for Wertheim Yards | 27, 491. 88 | |
| Balance cash in treasury | | 236, 748. 63 |
| Total | | 542, 663. 30 |

While it is true that the $45,163.30 of intangible assets paid in by E. L. Young & Co. for stock, could not, as such, be included in invested capital of petitioner, it is shown that these assets were, in the course of the organization, converted into cash. The issue of 1,863 shares of common stock to E. L. Young was then represented by $45,163.30 in cash, which was properly to be included in invested capital as cash against which the stock of petitioner was outstanding. Petitioner's total invested capital on March 1, 1920, was, therefore, the sum of the fixed assets plus cash in the treasury and aggregated $542,663.30.

Petitioner's contention for assessment of profits taxes under the provisions of section 328 of the Revenue Act of 1918 appears to be based wholly upon the disallowance of intangibles in invested capital and the comparatively large net income produced during the period here under review. It may be conceded that the amount of taxable income produced during this 10-month period is generously large but that fact alone does not warrant the application of the relief provided by section 328 of the Revenue Act of 1918, as the record of this case · seems to warrant the interpretation that petitioner's income for this

10-month period resulted, not so much from its intangible values which have been eliminated from invested capital, as from the elimination of competition in petitioner's business; the reduction of overhead as a result of the consolidation, and perhaps the general conditions prevailing in the trade in which this petitioner was engaged. We are, therefore, of the opinion that the petitioner has not made by this record a *prima facie* case requiring consideration of its profits taxes under the provisions of the relief section above referred to.

The deficiency should be recomputed in accordance with the foregoing findings of fact and opinion.

Reviewed by the Board.

*Judgment will be entered pursuant to Rule 50.*

TRAMMELL, concurring: I concur in the result reached. With respect to the inclusion in invested capital of $45,163.30 representing the cash received for intangible assets which were paid in by E. L. Young & Co. for 1863 shares of the petitioner's no par value stock, I agree that this amount should be included in invested capital but do not concur in the majority opinion with respect to the basis upon which it is allowed.

In my opinion, the fact that these intangible assets were sold for cash immediately after their transfer to the petitioner and the fact that there was an agreement that they would be transferred at that price entered into prior to the transaction, seem to me to establish the value of these intangible assets. This reduces the situation to a case where intangible assets of the value of $45,163.30 were paid in to the corporation for stock, and upon this ground they should be included in invested capital under the provisions of section 326, subject to the limitation on intangible assets acquired for stock. Since the capitalization was such that the entire value would be included in invested capital upon this basis, the same result is reached as is reached in the majority opinion and in my opinion this is a much sounder basis than that set forth in the majority opinion.

SMITH and MURDOCK agree with the above.