INDEPENDENT AETNA SPRINKLER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10588, 25755. Promulgated February 20, 1929.

*Irving Smith, Esq.,* and *Ward Loveless, Esq.,* for the petitioner.
*John D. Foley, Esq.,* for the respondent.

522

524

528

532

OPINION.

Morris: The first, second, and third allegations of error urged by the petitioner relate to the inclusion in invested capital of the value of a patent, the value of what is denominated " good will and organization," and the value of a so-called license agreement and the deductibility of exhaustion on said patent and agreement, based upon the remaining life thereof at the date of acquisition by the petitioner. The respondent contends that the petitioner has failed to establish the values contended for.

The petitioner alleges in its petition that it is entitled to a value of $200,000, as the cost of Patent No. 1,191,919, and $50,000 as the cost of the contract acquired from the Aetna Fire Sprinkler Co.

We have the testimony of a designing engineer, engaged in the automatic sprinkler industry for 20 years, who testified that he himself had invented over 80 appliances for automatic sprinkler devices, over 20 of which were in active use, and that he considered Patent No. 1,191,919, with which he was thoroughly familiar, to be worth not less than $250,000 on November 26, 1917. We also have the benefit of the testimony of a man who has been in the sprinkler business for 16 or 17 years, who testified that he made the original plans and designs for the fusible link covered by Letters Patent No. 1,191,919; that he handled the patent from the actual making of the sprinkler for the laboratory tests and approval, both in the Underwriters Laboratories in Chicago and the Mutual Laboratories in Boston, and that he considered the value thereof as of November 26, 1917, to be between $250,000 and $300,000. Having considered the testimony of those witnesses, together with other factors in corroboration thereof, and convinced, as we are, that the patent in question had a value equal to the amount attributed thereto and contended for by the petitioner, as recorded in its books of account, we have found in our findings of fact herein a value of $200,000 therefor.

With respect to the value of the agreement acquired by the petitioner from the Aetna Fire Sprinkler Co. for capital stock, we are convinced, and have found as a fact, that that agreement had a value when acquired in November, 1917, of $50,000. William A. Pope, vice president and director of the petitioner, who has been in the con-

tracting and sprinkler business since 1899, stated that the average prevailing prices in November, 1917, to those not so fortunate as to have a contract for the purchase of equipment were considerably higher than those in the contract, and furthermore, that said contract was worth not less than $100,000 at that time.

The respondent's counsel contends that the foregoing license agreement was not assigned to the petitioner until January 22, 1918 (the date of the formal recognition of the petitioner as assignee by the Ohio Automatic Sprinkler Co.), and consequently no value could be ascribed thereto on November 26, 1917, when the petitioner acquired the assets of the Aetna Fire Sprinkler Co. With respect to this we have only to say that the direct testimony of witnesses is to the effect that the petitioner acquired its rights under that contract on November 26, 1917, and furthermore that it operated thereunder during the years 1918 to 1922, inclusive. We have heretofore held in *The Hub, Inc.*, 3 B. T. A. 1259, that an oral assignment of a leasehold interest in real estate is voidable, not void, and where the parties have recognized said assignment as valid and subsisting, it can not be collaterally attacked by third parties. From the record before us, as we have said, the assignment took place on November 26, 1917, and we infer, in the absence of testimony to the contrary, that the parties regarded tnemselves as bound thereby from that date, and we must so treat them.

Having determined the values of Patent No. 1,191,919 and the license agreement acquired from the Aetna Fire Sprinkler Co., the petitioner is entitled to exhaust those values over the remaining life of the assets.

The respondent strongly contends that section 331 of the Revenue Acts of 1918 and 1921 is controlling and that even though the values claimed by the petitioner were determined by the Board for exhaustion purposes, they should not be included in invested capital. The petitioner contends, on the other hand, that the case is not controlled by that section for the reason that the respondent did not so find at the outset and the pleadings do not raise that question, and furthermore, that the proof shows that it is inapplicable for the reason that an interest or control of 50 per cent or more in no prior trade, business or property here at issue, remained in the same persons or any of them. In our view of the case it is unnecessary to pass upon the question of the pleadings. The assets, the inclusion of the value of which in invested capital is in controversy, were owned by the Aetna and Independent companies prior to the reorganization, and these companies received in exchange therefor, 14 per cent and 35 per cent, respectively, of the petitioner's stock. Section 331 is therefore not applicable to those assets. *R. H. Perry & Co.*, 12 B. T. A. 328. In that case we said:

\* \* \* Section 331 \* \* \* applies to instances of individual acquirement of "*a trade or business*" or individual "*change of ownership of property*" in the sense that the business or property, as the case may be, is acquired from one owner or several joint owners. It is clear to us that Congress by this provision intended to restrict those reorganizations or consolidations effected, or transfers of property made, with the intent of capitalizing unrealized appreciation in asset values, and provided, in effect, the test for such intent to be the *retaining* of an interest or control of 50 per cent or more in the property conveyed. In those cases where the former owner or owners of the particular property was willing to surrender the interest or control of 50 per cent or more which he or they theretofore held in the property, the limitation on invested capital would not apply.

Having found that the patent acquired from the Independent Sprinkler Co. and the license agreement acquired from the Aetna Fire Sprinkler Co. in exchange for stock had actual values of $200,000 and $50,000, respectively, at the date of acquisition, the petitioner's invested capital should be computed upon that basis.

If the petitioner acquired any good will of value in 1917, we can safely eliminate the assets acquired from the Independent Sprinkler Co. and the Allis Fire Extinguisher Co. from our consideration, as there is no evidence in the record from which we may find a value. Therefore, we shall consider the evidence offered in substantiation of the value of good will acquired from the Aetna Fire Sprinkler Co. The petitioner contends that, because of the fact that that company operated successfully since 1913 and paid dividends during the period of its operations, and based upon its earnings of $20,698.83 in 1916 and $44,838.43 in 1917, we should find the value of good will by the use of a formula. We have as evidence bearing upon this subject the testimony of a witness that in his opinion the Aetna Fire Sprinkler Co. had a good will on or before November 26, 1917. We have the dividend record of that company from 1914 to 1917 inclusive, balance sheets for three years, and the amounts of net income for 1916 and 1917. The witness who testified that in his opinion that company had a good will did not venture an opinion as to the amount thereof, nor was the basis for his opinion given. Even assuming that the existence of good will has been satisfactorily proven, we are of the opinion that good will can not be properly determined by the use of the average net income and net tangibles for a period of only two years. We must hold, therefore, that the evidence is not sufficient to establish the value of good will on November 26, 1917, acquired from either of the three companies at that time.

Since it does not appear from the record that the respondent's action complained of in the fourth allegation of error herein was contrary to the regulations in force for the various taxable years, as provided in section 1207 of the Revenue Act of 1926, we must sustain his determination in that particular.

The petitioner having offered no evidence in support of the fifth allegation of error, we must approve the action of the respondent in applying a 15 per cent rate to furniture and fixtures and factory equipment in determining deductible depreciation for the years in question.

Following *L. S. Ayers & Co.*, 1 B. T. A. 1135, the respondent's action in reducing petitioner's invested capital for 1921 by the accrual of the tentative tax in computing earnings available for dividends, was erroneous. See also *Commissioner* v. *Pittsburgh Knife & Forge Co.*, 30 Fed. (2d) 522.

As the seventh and last issue raised by the pleadings is in the alternative, a discussion thereof is unnecessary in view of our decision on other issues.

*Judgment will be entered under Rule 50.*