Bleichroeder, Bing & Co., Inc. v. Commissioner.
Bleichroeder, Bing & Co. v. Commissioner
Docket No. 30089.
United States Tax Court
1953 Tax Ct. Memo LEXIS 376; 12 T.C.M. (CCH) 117; T.C.M. (RIA) 53043; February 11, 1953
Milton L. Rosenberg, Esq., 39 Broadway, New York, N. Y., for the petitioner. Paul M. Stewart, Jr., Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax of the petitioner of $1,635.90 for 1945 and $1,423.59 for 1946. The only issue for decision is whether the petitioner is entitled to a deduction of $6,000 for each year representing payments to the widow of a deceased officer. Findings of Fact The petitioner was incorporated under the laws of New York in the spring of 1938. Its returns for the taxable years were filed with the collector of internal revenue for the Second District of New York. The petitioner was engaged in the insurance brokerage business. Paul Bleichroeder became associated with *377 the petitioner as vice president in 1939. He had been engaged in the insurance brokerage business in Europe for many years, had a wide acquaintance among persons who purchased insurance, and was a very good business getter. The stock of the petitioner consisted of 30 shares, each share having a par value of $100. Frenkel & Co., Jonas Bing & Co. of Rotterdam, of which Ernst Bing was a partner, and Bleichroeder & Co. of Amsterdam, of which firm Paul Bleichroeder was a partner, each originally held 10 shares of the stock of the petitioner. Ernst Bing and Paul Bleichroeder each owned 15 shares in 1942. Arnold Herzfeld, the brother-in-law of Paul Bleichroeder, came to work for the petitioner about June 1, 1942. The brokerage commissions of the petitioner increased from about $9,000 in 1938 to about $234,000 in 1942. Bleichroeder was responsible for a large part of the business of the petitioner. He was married but had no children. Bing and Herzfeld had sons. Bleichroeder told Bing and Herzfeld in the summer of 1942 that he was concerned because they had sons who could come into the business but he had none and if he should die, his wife would have no income from the business; he *378 could work for some other firm which would provide a pension for his wife in case of his death; and he wanted the petitioner to provide a way for his wife to receive some income after his death. A number of conferences were held in which the three persons already named participated together with Alex Craven, the secretary of and the attorney for the petitioner. The attorney prepared drafts of proposed pension agreements between the corporation and Bleichroeder, Bing and Herzfeld. A draft submitted by Craven was agreed to by Bleichroeder, Bing and Herzfeld at a meeting in the early part of February 1943. It was understood at that meeting that agreements for each of the three in exact accordance with the draft would be prepared and executed, but no such agreements were ever signed by the parties. Bleichroeder went on a vacation in February 1943, shortly after that meeting, and had an accident, while riding horseback, from which he died on April 9, 1943. Herzfeld was elected vice president of the petitioner and a director on April 12, 1943 to take the place of Bleichroeder, and, in June 1943, acquired from Bleichroeder's heirs at book value the 15 shares of stock in the petitioner *379 theretofore owned by Bleichroeder. Craven advised the petitioner in June 1943 that since it had been agreed at the meeting in February that the final draft would be the pension agreement binding upon the petitioner and the three parties involved, it represented a firm agreement, as they all recognized, notwithstanding the lack of execution of a formal document, and although the firm might successfully interpose the defense of the Statute of Frauds he though that would constitute bad faith and the terms of the agreement should be carried out. The agreement, as indicated by the final draft, recited that Bleichroeder was a valued employee who had contributed largely to its success and the corporation had decided in the interests of good business and to retain the efficient services of its more valued employees to provide for the widows of such employees. The agreement provided that if Bleichroeder was receiving compensation from the corporation at the time of his death or was the holder of any of its stock, the corporation would pay to his widow if she survived him, a pension for the first five years equal to 25 per cent of the combined salaries of Bing and Herzfeld for each year, *380 but in no event less than $3,000 nor more than $6,000 in each year. The payments, during the next five years, were to be 16 2/3 per cent of the combined salaries but not less than $2,000 nor more than $6,000 for each year, and during the next ten years a sum equal to 12 1/2 per cent of the combined salaries of Bing and Herzfeld but not less than $1,500 nor more than $6,000. There was no provision for a pension beyond 20 years. The petitioner carried out the agreement and paid the widow of Bleichroeder $6,000 in 1945 and $6,000 in 1946. Those payments plus the amounts theretofore received by Bleichroeder were not in excess of the reasonable worth of his services. The Commissioner, in determining the deficiencies, disallowed a deduction of $6,000 for each year and explained that the payments of those amounts in each year to the widow of Bleichroeder did not constitute an ordinary and necessary expense of the business within the provisions of section 23 (a) of the Internal Revenue Code. All facts stipulated by the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: The fact that this contract was not in writing does not help the *381 Commissioner. Denholm & McKay Co., 2 B.T.A. 444; The Hub, Inc., 3 B.T.A. 1259. The Commissioner contends that the cases of $ McLaughlin Gormley King Co., 11 T.C. 569, and I. Putnam, Inc., 15 T.C. 86, are controlling, but a comparison of the facts in the present case with the facts in those cases show that the cases are distinguishable. The petitioner properly contends that this case is controlled by Seavey & Flarsheim Brokerage Co., 41 B.T.A. 198. The petitioner sought by means of the agreement to retain the extremely valuable service of Bleichroeder who, in 1942, had been responsible for considerably more than half of the business of the company. It agreed to pay, in addition to his salary, a pension to his wife for 20 years. This agreement did not make the total compensation paid him exceed the reasonable worth of his services. The payments were made pursuant to the contract, the contract was fair and reasonable and entered into at arm's length by parties with conflicting interests, and no contention is made that they did not have authority to bind the corporation. The Commissioner erred in disallowing the deductions *382 of $6,000 claimed for each year. Decision will be entered under Rule 50.