John M. BRILEY and Dorothy D. Briley, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 14529.

United States Court of Appeals Sixth Circuit.

Jan. 30, 1962.

John B. Spitzer, Marshall, Melhorn, Block & Belt, Toledo, Ohio, for plaintiffs-appellants.

John A. Bailey, Tax Division, Dept. of Justice, Washington, D. C., Russell E. Ake, U. S. Atty., Cleveland, Ohio (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Chief, Appellate Sec., Robert N. Anderson and John A. Bailey, Attys., Tax Division, Dept. of Justice, Washington, D. C., on the brief), for defendant-appellee.

Before MARTIN, SIMONS and WEICK, Circuit Judges.

WEICK, Circuit Judge.

The action in the District Court was for the recovery of income taxes alleged to have been illegally assessed and collected.

In 1944, taxpayers acquired an interest in a cooperative housing apartment located in New York City. The interest was evidenced by a 99-year lease on the apartment rented to them and 700 shares of common stock in the corporation owning the building. The corporation had originally set aside 1,000 shares of stock which were required to be purchased by a lessee in order to rent the particular apartment, but taxpayers were able to purchase only 700 shares. They agreed to purchase the remaining 300 shares on demand after September 30, 1949 or surrender their shares and terminate the lease. Taxpayers paid $1.08 per share for the 700 shares of stock plus an assessment of $10.00 per share. The number of shares purchased determined the amount of rent to be paid for the apartment under the 99-year lease which rental was not to be in excess of $10.00 per share in any year. The rental received from the tenants was used by the corporation in paying operating expenses including payments on the mortgage indebtedness on the apartment property. Taxpayers had the right to surrender the lease and their stock to the corporation at any time and be relieved of the obligation to pay any further rent.

Taxpayers lived in their apartment until June 1949 when they vacated it and moved to Rye, New York. They had listed the apartment with brokers for rent or sale.

On November 23, 1949, while the apartment was still vacant, the corporation made written demand on taxpayers to purchase the additional 300 shares of stock. In order to prevent the rental from increasing from $7,000 to $10,000

a year, which would have resulted from the purchase of the additional shares, taxpayers requested the corporation to modify its demand. On March 30, 1950 a modification of the original 1944 agreement was entered into whereby the taxpayers agreed to pay an amount equal to $10,000 per year rental for a period of three years as if they had acquired the 300 shares of stock and upon the expiration of the three-year period the rental would then be $7,000 per annum until the end of the term of the lease. The agreement relieved taxpayers of their obligation to purchase the additional 300 shares of stock and provided that if they sold and assigned the lease and stock before the expiration of the three-year period the entire unpaid balance of the increased rental of $3,000 per year payable during said period would become due and payable.

Taxpayers paid the increased monthly rental commencing October 1, 1950. On March 21, 1951 taxpayers sold and assigned the lease and the 700 shares of stock to a purchaser for $5,000 and paid the corporation $7,875 as required by the modification agreement dated March 30, 1950.

The case was submitted to the District Court on motions for summary judgment filed by plaintiffs and defendant. The District Judge gave careful consideration to the various questions involved and, in a memorandum opinion, held that the long term capital loss in connection with the sale of the lease and 700 shares of stock was not deductible from their income for the reason that the loss was personal in nature and not part of a transaction entered into for profit. Section 23(e) (2) Internal Revenue Code of 1939, as amended, 26 U.S.C. § 23(e) (2). Taxpayers do not question that ruling here.

The District Court also held that taxpayers could deduct as an ordinary and necessary expense the rent paid in 1951 prior to the sale amounting to $2,625.00 because at that time the taxpayers held the property for the production of income. The Government has conceded that point.

The District Judge further held that the accelerated lump sum payment of rent made by the taxpayers under the modification agreement of March 30, 1950 in the amount of $7,875 was not deductible from income because, in effect, it represented an advance payment of rent for the benefit of taxpayers' assignee and could not be considered as a maintenance expense as it was allocable to the period after assignment of the lease.

The sole question in this appeal is whether the payment of $7,875 was deductible as an ordinary and necessary expense under Section 23(a) (2) of the Internal Revenue Code of 1939, as amended, which provides as follows:

"(2) Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."
Title 26 U.S.C. § 23(a) (2).

In this Court, as in the District Court, the Government contended that the lump sum payment should be considered as a capital expenditure and, therefore, not deductible from income as an ordinary and necessary expense. The District Judge ruled against the Government on this issue and we think he was correct. Taxpayers acquired no new asset as a result of the modification agreement. By reason of the agreement they were relieved of the obligation to purchase 300 additional shares of stock in the corporation and to pay increased rental which the purchase of the shares would require. Taxpayers retained their lease and 700 shares of stock. The corporation accepted an agreement to pay increased rent over a three-year period amounting to $9,000.00 in lieu of the purchase of 300 additional shares and the payment of increased rental which the purchase would require. The Dis-

trict Judge said: "The total increased rent paid by plaintiff for the period of his ownership of the lease during 1951 should therefore be treated as an ordinary and necessary expense under Section 23(a) (2)."

It was pursuant to this ruling that the District Court allowed as a deduction the rental paid in 1951 to the date of sale amounting to $2,625.00. If taxpayers had not sold their lease and shares of stock, the balance of the increased rental due under the modification agreement in the amount of $7,875.00 would have been allowed as a deduction in the year of payment. It was the sale of the lease and stock which accelerated the payment of the increased rental and made it all due and payable in the tax year of 1951. We take it that if the parties had agreed to pay all of the increased rental in one year instead of three years the payment would have been deductible as an ordinary expense in that year. The acceleration of the increased rental payments occasioned by the sale accomplishes the same result and ought not to make any difference in the applicable rule. We regard the lump sum payment as having been made by taxpayers for their own benefit in order to enable them to sell the lease. Moreover, the sale produced income to the taxpayers, namely, $5,000 although it also resulted in a substantial long term capital loss for which they were unable to obtain a deduction.

A rather liberal definition as to what constitutes an "ordinary" expense was adopted by the Supreme Court in Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 in an opinion written by Mr. Justice Cardozo.

If the lump sum payment made by taxpayers under the modification agreement is not to be treated as rent, it would still be deductible as an ordinary expense paid as consideration for the modification of the 1944 agreement. Cassatt v. Commissioner, 137 F.2d 745 (C.A.3); Wigmore Realty Co. v. United States, 104 F. Supp. 439 (N.D.Ohio, E.D.); The 12701

Shaker Blvd. Co. v. Commissioner, 36 T.C. 255 (May 12, 1961); Mosser v. Commissioner, 27 B.T.A. 513; Denholm & McKay Co. v. Commissioner, 2 B.T.A. 444.

We see no merit in the contention of the Government that the property was not held for the production of income on the date of the modification agreement. The apartment had been vacant since the middle of 1949 and was listed with brokers for rent or sale. It had been converted from a personal asset into one held for the production of income prior to 1950.

In our opinion, taxpayers were entitled to a deduction for the payment of $7,875.00.

The judgment of the District Court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.