STEPHEN BOLARIS AND VALERIE H. BOLARIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17748–80.     Filed November 8, 1983.

Stephen Bolaris, pro se.
*Lin Murphy,* for the respondent.

DAWSON, *Chief Judge*: This case was assigned to and heard by Special Trial Judge Fred S. Gilbert, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

GILBERT, *Special Trial Judge*: Respondent determined deficiencies in petitioners' Federal income taxes of $486 and $408 for the taxable years 1977 and 1978, respectively. By amended answer, respondent asserted an increased deficiency of $3,339 for the taxable year 1978. After concessions by each party, the issues presented for decision are: (1) Whether, with respect to the taxable year 1978, petitioners are entitled to defer recognition of the gain realized upon the sale of their former residence, pursuant to section 1034, even though they temporarily rented the property prior to its sale; and (2) whether, for the taxable years 1977 and 1978, petitioners are entitled to deductions, under section 167, 212, or 162, for depreciation and other expenses incurred and paid in connection with renting such residence while attempting to sell it.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

The petitioners, Stephen Bolaris and Valerie H. Bolaris (hereinafter petitioners), husband and wife, resided in San Jose, Calif., at the time they filed their petition in this proceeding. They filed joint Federal income tax returns for the taxable years 1977 and 1978.

In August 1975, petitioners purchased a home at 339 Orick Court, San Jose, Calif., which they used as their principal

---

[1]All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise indicated.

[2]Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure, the post-trial procedures set forth in that Rule are not applicable to this case.

residence from August 1975 until October 1977. The total purchase price was $44,000. During July 1977, petitioners began construction of a new principal residence in San Jose and, in October 1977, completed and occupied the new residence, at a total cost of $107,040.75.

On July 14, 1977, in anticipation of moving to their new residence, petitioners contacted a realtor regarding the sale of their old residence on Orick Court, giving him an exclusive listing for 90 days. When this realtor failed to bring petitioners any offers of purchase, they decided to rent the house while continuing their efforts to sell it with the help of another realtor. By this time, petitioners had moved into their new residence and had no intention of returning to their old residence.

Although petitioners successfully rented their old residence soon after they had moved to their new residence, they intended and always wanted to sell the old residence as soon as they received a reasonable offer. Petitioners' decision to rent their old residence was based upon a complete lack of offers to purchase the property and a continuing need for cash to satisfy their obligations arising from the ownership of both their old and new residences. They had no expectation or intention of making a profit from the rental of their old residence, but instead rented it simply to "lessen the burden of carrying the property." Petitioners were not sure whether having the house occupied would improve or decrease their chances of receiving an offer to purchase the property.

Petitioners began renting their old residence in October 1977, with the first tenant occupying the house pursuant to a month-to-month tenancy. Petitioners eventually asked the first tenant to leave because they had come to believe that their chances of receiving an acceptable offer might be improved if the house were unoccupied. In accordance with petitioners' request, the first tenant vacated the house at the end of May 1978. Throughout the period October 1977 through May 1978, petitioners continued trying to sell the house.

Approximately 6 weeks after the house was vacated by the first tenant, petitioners received an offer to purchase the property. Petitioners accepted the offer, received a deposit on. the purchase price, and then proceeded to complete the sale of the house. The property was eventually sold on August 14,

1978, for $70,000. The purchasers had some difficulty in obtaining the necessary financing. However, since it did appear certain that financing would be forthcoming, petitioners rented the house to them for approximately 1 month before the sale became final.

The parties have stipulated that the house on Orick Court was rented to both tenants at its fair rental value. For the years 1977 and 1978, petitioners received rental income from the property of $1,271 and $2,717, respectively. Petitioners reported this income on their tax returns for those years and claimed deductions for expenses attributable to the period during each taxable year that the house was rented as follows:

| Expense | 1977 | 1978 |
|---|---|---|
| Mortgage interest | $1,505.28 | $4,911.68 |
| Property taxes | 252.27 | 720.32 |
| Insurance | 236.00 | --- |
| Miscellaneous expenses | 542.67 | 692.12 |
| Total | 2,536.22 | 6,324.12 |

In addition, petitioners claimed depreciation deductions of $373 for 1977 and $1,120.16 for 1978, utilizing the straight-line method, a 27-year useful life for the house, and a 10-year useful life for certain appliances which remained in the house. Although respondent disputes the deductibility of depreciation, he agrees that depreciation was correctly determined and that the expenses described above were incurred and paid by petitioners.

Petitioners' 1977 and 1978 tax returns reflect losses incurred in connection with the rental of their old residence of $3,738[3] and $4,727.28, respectively. Their 1978 tax return also shows that a gain in the amount of $20,708.45 was realized on the sale of their old residence, and that recognition of such gain was deferred pursuant to section 1034.

## OPINION

Both issues presented in this case relate to petitioner's former residence on Orick Court.

---

[3]The parties recognize that a mathematical error on the 1977 return resulted in a $100 overstatement of the loss claimed by petitioners for that year.

In his notice of deficiency, respondent disallowed petitioners' claimed deductions for depreciation, insurance, and miscellaneous expenses incurred while renting their former residence on the grounds that the requirements of sections 167, 162, and 212 had not been satisfied. They were disallowed specifically upon a determination that the claimed deductions were attributable to an "activity not engaged in for profit" within the meaning of section 183. By amended answer, respondent asserted an increased deficiency for the taxable year 1978 on the basis that petitioners were not entitled to the benefits of section 1034 if the Court should hold that petitioners are entitled to deductions under section 167, 162, or 212. On brief, however, respondent does not seriously challenge the applicability of section 1034 to the sale in question, stating that "the best view of the facts of this case is that petitioners qualify for section 1034 treatment. [Section 1034] is available because petitioners never converted the house from personal use." Nevertheless, since respondent has raised the possibility that section 1034 does not apply, and because his position with regard to the deductions claimed for depreciation and the expenses described above is based upon petitioners' assertion that section 1034 is applicable, we shall first consider whether petitioners are entitled to the benefits of that section.

Section 1034 provides for nonrecognition of gain realized on the sale of property used by the taxpayer as his principal residence to the extent that the sales price does not exceed the cost of purchasing or constructing a new residence, but only if the new residence is purchased or constructed within a specified period of time.[4] The parties recognize that the cost of

---

[4]As in effect on the date of sale, sec. 1034 read, in part, as follows:

SEC. 1034. ROLLOVER OF GAIN ON SALE OF PRINCIPAL RESIDENCE.

(a) NONRECOGNITION OF GAIN.—If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him and, within a period beginning 18 months before the date of such sale and ending 18 months after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

      \*      \*      \*      \*      \*      \*      \*

(c) RULES FOR APPLICATION OF SECTION. \* \* \*

(2) A residence any part of which was constructed or reconstructed by the taxpayer shall be treated as purchased by the taxpayer. In determining the taxpayer's cost of purchasing a residence, there shall be included only so much of his cost as is attributable to the

constructing petitioners' new residence exceeded the sales price of their old residence and that sale of the old residence occurred within the period fixed by the statute. The dispute in the instant case instead concerns the question of whether the rental of the old residence prior to its sale precludes the application of section 1034. The point of disagreement is well illustrated by the case of *Clapham v. Commissioner*, 63 T.C. 505 (1975).

In *Clapham*, the taxpayers began their efforts to sell their old residence approximately 4 months before vacating the residence in August 1966 and moving to rented housing. The taxpayers at no time intended to return to their old residence, and had no plans for it other than to dispose of it as soon as an offer was received. From August 1966 until spring of the following year, the taxpayers continued their efforts to sell their old residence, and during this period the house was left vacant to facilitate its sale. However, because of a lack of offers to purchase the property, the taxpayers then accepted an offer to lease the house for 1 year with an option to purchase. Although the taxpayers' primary wish was to sell the house, financial circumstances dictated acceptance of the offer. When the lease expired and the lessee vacated without exercising the option, the taxpayers resumed their efforts to sell the house, again leaving the property vacant to facilitate its sale. The house was again rented for a short period during the fall of 1968, and then eventually sold in June 1969. The taxpayers' purchase of a new residence in September 1968 placed the sale within the period then required by section 1034.

The sole issue presented to the Court in *Clapham* was whether the sale of the old residence qualified as a sale of the taxpayers' "principal residence" subject to the nonrecognition provisions of section 1034. Relying on this Court's decision in

---

acquisition, construction, reconstruction, and improvements made which are properly chargeable to capital account, during the period specified in subsection (a).

\* \* \* \* \* \* \*

(5) In the case of a new residence the construction of which was commenced by the taxpayer before the expiration of 18 months after the date of the sale of the old residence, the period specified in subsection (a), and the 18 months referred to in paragraph (4) of this subsection, shall be treated as including a period of 2 years beginning with the date of the sale of the old residence.

*Stolk v. Commissioner*, 40 T.C. 345 (1963), affd. per curiam 326 F.2d 760 (2d Cir. 1964), and *Houlette v. Commissioner*, 48 T.C. 350 (1967), the Commissioner argued that, by vacating their old residence with no intent to return, the taxpayers had "abandoned" it as their principal residence, so that the property was not their principal residence when it was sold. The Court rejected the Commissioner's argument, stating that, rather than establishing a rule of law that a taxpayer must actually be occupying or intending to return to his old residence, those cases made it clear that "whether or not property is the principal residence of the taxpayer depends on all the facts and circumstances in each individual case." *Clapham v. Commissioner, supra* at 508.

The Court observed that, under appropriate facts and circumstances, a taxpayer could vacate and temporarily rent his old residence and still be entitled to the nonrecognition treatment under section 1034, relying, in part, on the following legislative history, 63 T.C. at 510 n. 8:[5]

The term "residence" is used in contradistinction to property used in trade or business and property held for the production of income. Nevertheless, the mere fact that the taxpayer *temporarily* rents out either the old or the new residence may not, in the light of all the *facts and circumstances* in the case, prevent the gain from being not recognized. H. Rept. No. 586, 82d Cong., 1st Sess., p. 109 (1951); S. Rept. No. 781 (Part 2), 82d Cong., 1st Sess., p. 32 (1951). (Emphasis supplied.)

The Court held that the Claphams were entitled to the benefits of section 1034, concluding that the following facts and circumstances were relevant in determining that their rental activity constituted a "temporary" rental contemplated by Congress, 63 T.C. at 512:

Petitioners habitually used their [old residence] as their principal residence as required by the statute. The parties have stipulated that the petitioners had no plans for this former residence other than to dispose of it as soon as an offer was received; that they received no offers to purchase the house until the time of sale in 1969; that financial circumstances dictated acceptance of an offer to rent in the spring of 1967 and again in the fall of 1968; and that the primary wish of petitioners was to sell their old residence. Additionally, the earlier lease included an option to purchase and the property was left vacant for substantial periods in order to facilitate sales

---

[5]See also sec. 1.1034–1(c)(3)(i), Income Tax Regs.; *Aagaard v. Commissioner*, 56 T.C. 191 (1971).

efforts by the real estate broker with whom petitioners had listed the property.

We believe these rentals were necessitated by the exigencies of the real estate market, were ancillary to sales efforts, and arise from petitioners' use of the [old residence] as their principal residence. The rental activities and the sale of the property were precipitated by the change in Mr. Clapham's employment location that Congress viewed as an "involuntary conversion" situation where the need for relief is "especially clear." *In leasing the premises, petitioners' dominant motive was to sell the property at the earliest possible date rather than to hold the property for the realization of rental income.*

´ [Fn. ref. omitted; emphasis added.]

The facts presented in the instant case are quite similar to the facts presented in *Clapham*. Cf. *R. Joe Rogers v. Commissioner*, T.C. Memo. 1982–718, for a situation distinguishable from the facts presented in *Clapham*. The petitioners here began trying to sell their old residence several months before their scheduled move, and they had no plans for it other than to sell it as quickly as possible. The first rental was dictated by financial circumstances, while the second rental occurred only when it appeared certain that the lessee would soon purchase the house. In addition, petitioners suspended their rental efforts and left the house vacant to facilitate its sale, eventually accepting the first offer to purchase the property. In short, petitioners' rentals were "necessitated by the exigencies of the real estate market, were ancillary to sales efforts and [arose] from [their] use of the [old residence] as their principal residence." Their primary motive in leasing the property was to sell it at the earliest possible moment rather than to hold it for the production of income. Thus, in accordance with *Clapham*, we conclude that the rentals in this case were temporary rentals contemplated by the above-cited legislative history and that petitioners are entitled to defer recognition of the gain realized on the sale of their old residence pursuant to section 1034.

We next turn to the question of whether, with respect to their old residence, petitioners are entitled to deduct depreciation under section 167 or insurance and miscellaneous expenses under section 162 or 212. Petitioners would be entitled to deduct depreciation and such expenses under those sections

if the property were either used in a trade or business or held for the production of income.[6]

Petitioners do not contend that their former residence was used in a trade or business; however, they argue that, for the period during which they rented the residence, they were holding the property for the production of income within the meaning of sections 167(a)(2) and 212. Their argument is based simply upon the fact that they successfully rented the property at its fair market value.

Respondent's position on this issue is that the very factors that demonstrate that petitioners' rental activities did not preclude the application of section 1034 also demonstrate that their former residence was never held for the production of income within the meaning of sections 167(a)(2) and 212. Specifically, respondent's theory is that such factors show that petitioners' rental activities were not undertaken with an objective to make a profit as required under those sections. Accordingly, in cases of the type presented here, respondent contends that a taxpayer's depreciation and rental expense deductions are allowable only as provided in section 183(b).[7]

---

[6]SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business, or

(2) of property held for the production of income.

SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; * * *

[7]SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT.

(a) GENERAL RULE.—In the case of an activity engaged in by an individual * * * , if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section.

(b) DEDUCTIONS ALLOWABLE.—In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed—

(1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and

(2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only

We recognize, of course, that successfully renting one's former residence would normally establish that the residence had been "converted" from personal use to business use, and that renting the residence at its fair market value would normally suggest that the taxpayer had the requisite profit objective. See sec. 1.212–1(h), Income Tax Regs.; *Horrmann v. Commissioner*, 17 T.C. 903, 907 (1951); *Jasionowski v. Commissioner*, 66 T.C. 312, 322 (1976). However, under the facts presented here, we think that the respondent's position is sound.

In order to be allowed deductions under section 162, 167, or 212, petitioners must prove that their rental activities were "undertaken with the primary intention and motivation of making a profit." *Jasionowski v. Commissioner, supra* at 319. We agree with respondent that the factors cited above in support of petitioners' entitlement to nonrecognition treatment under section 1034 clearly show that the rental activities in question were not undertaken for such purpose. The very nature of petitioners' rental activity—i.e., temporary, ancillary to sales efforts, renting on a monthly basis, requesting that the first tenant vacate to facilitate sales efforts—demonstrates that it was not engaged in for the objective of making a profit.

Petitioners respond that, even though they had no objective of making a profit from the rental of their residence, they should nevertheless be allowed the claimed deductions on the ground that they were attempting to minimize the economic burden of owning their old residence while attempting to sell it.[8] In support of this argument, petitioners rely on sec. 1.212–1(b), Income Tax Regs., which reads, in part:

to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).

(c) ACTIVITY NOT ENGAGED IN FOR PROFIT DEFINED.—For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212.

In the instant case, petitioners were not allowed deductions under sec. 183(b) since the gross income from their old residence did not exceed the deductions that were allowed without regard to whether or not the rental activity was engaged in for profit, i.e., their deductions for interest and taxes.

[8]Petitioners also direct our attention to sec. 1.212–1(h), Income Tax Regs., which reads:

(h) Ordinary and necessary expenses paid or incurred in connection with the manage-

Expenses paid or incurred in managing, conserving, or maintaining property held for investment may be deductible under section 212 even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto.

It is obvious, however, that a precondition to the applicability of this provision is that the subject property have the character of property "held for investment," i.e., held for production of income, and that the absence of a profit objective necessarily precludes such a characterization.

Although issues such as those here in question must ultimately be decided on the basis of the facts and circumstances involved in each case, we think that, as a general proposition, rental activity of the type presented here and in *Clapham* does not entitle taxpayers to claim deductions under section 162, 167, or 212. Cf. *Davies. v. Commissioner*, 54 T.C. 170, 175 (1970), wherein, in denying nonrecognition of gain under section 1034, the Court noted that the term "residence" is used there in contradistinction to property used in a trade or business and property held for the production of income.

In accordance with the foregoing, we conclude that petitioners are not entitled to the claimed deductions for depreciation, insurance, or miscellaneous expenses relating to the rental of their old residence.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

KÖRNER, *J.*, concurring: I concur in the majority opinion, both as to the result and the reasoning by which that result

---

ment, conservation, or maintenance of property held for use as a residence by the taxpayer are not deductible. However, ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held by the taxpayer as rental property are deductible even though such property was formerly held by the taxpayer for use as a home.

This regulation does not assist petitioners. The phrase "held by the taxpayer as rental property" simply restates the language of secs. 162, 167, and 212, and obviously incorporates the profit objective requirement stated above.

was reached. I write this concurring opinion only to call attention to one aspect of this case which might not be readily apparent from a first reading of the majority opinion.

In this case, respondent determined that the deductions claimed by petitioners for depreciation, insurance, and miscellaneous expenses incurred while renting their former residence should be disallowed, on the ground that the rental of that property prior to sale was not an activity engaged in for profit, within the meaning of section 183. The majority opinion correctly finds and holds that petitioners were not engaged in the trade or business of renting this property, and further that the property was not rented with the purpose of making a profit.

In these circumstances, section 183(b) provides for the deductions which shall be allowable. Section 183(b)(1) allows:

the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit,
* * *

In the years in question, petitioners had expenses of this type as follows:

| Expense | 1977 | 1978 |
|---|---|---|
| Mortgage interests | $1,505.28 | $4,911.68 |
| Property taxes | 252.27 | 720.32 |
| Total | 1,757.55 | 5,632.00 |

Section 183(b)(2) further allows deductions to taxpayers in the present situation, as follows:

a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).

Applying these provisions to the facts of the instant case, therefore, petitioners had gross income from this property and expenses allowable under section 183(b)(1) as follows:

| | 1977 | 1978 |
|---|---|---|
| Gross income | $1,271.00 | $2,717 |
| Sec. 183(b)(1) expenses (from above) | 1,757.55 | 5,632 |
| Remaining gross income | 0 | 0 |

The deductions in issue here were of the type allowable only with the limitations described in section 183(b)(2) and, since there was no gross income left to absorb such deductions after subtracting the deductions allowable by section 183(b)(1), respondent correctly determined and the majority opinion correctly holds that such deductions are not allowable in this case. The majority opinion, however, should not be misread as holding that deductions of the type in issue here would *never* be allowable. If all the facts in the present case were the same, with the single exception that the gross rental income derived by petitioners from this rental property were $7,500 in each year, the claimed deductions would clearly have been allowable under section 183(b)(2), since there would have been sufficient gross income left, after subtracting the section 183(b)(1) deductions, to absorb the amounts claimed. This point is inferentially recognized in the majority opinion (see majority opinion, note 7), but I think it deserves emphasizing here, lest our holding in this case be stretched further than it was intended to reach. Although petitioners here were not entitled to claim deductions under section 162, 167, or 212, as the majority says, because they did not qualify at all under those sections, they were still entitled to *some* deductions, to the extent permitted by section 183(b). See *Brannen v. Commissioner*, 78 T.C. 471, 500 (1982) (Court reviewed).

NIMS, *J.*, agrees with this concurring opinion.

WILBUR, *J.*, dissenting: The only issue really before the Court is whether or not petitioner is entitled to deduct expenses incurred for the production of income under section 212. In relevant part, section 212 allows the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year for the management, conservation, or maintenance of property held for the production of income." That a business venture is temporary or of an indefinite duration has never been grounds for denying the deduction of expenses incurred, any more than it is grounds for excluding the income generated.

It is not unusual for an employee to be transferred to a temporary or indefinite duty site for 1 or 2 years. If he rents

his personal residence for a fair market value during his absence, it remains his personal residence in the colloquial sense. Nevertheless, the expenses associated with renting the property are deductible during the temporary or indefinite period the property is rented or "held for the production of income." Similarly, a couple may move from a large home to a smaller rental unit upon retirement. If due to high interest rates and/or a poor real estate market, they must rent their former residence for a couple of years in conjunction with efforts to sell, the expenses associated with that rental are deductible. And a couple in precisely the same circumstances except that they buy rather than rent after moving is entitled to the same treatment.

In considering the applicability of section 212, a principled distinction cannot be made between these three cases. In conditioning the applicability of section 212 on the inapplicability of section 1034 (making the two sections mutually exclusive) the majority is in error. Congress did not intend to indirectly amend section 212 when it enacted section 1034 in 1951, and never even hinted that temporary rentals of property qualifying for section 1034 treatment would be treated differently or carved out from other temporary rentals for purposes of section 212. Indeed, Congress specifically stated that *either* the *old or new* residence could be temporarily rented consistent with section 1034. H. Rept. 586, 82d Cong., 1st Sess. 109 (1951), 1951–2 C.B. 357, 377; S. Rept. 781 (Part 2), 82d Cong., 1st Sess. 32 (1951), 1951–2 C.B. 458, 483. A 2-year rental for a fair market value of a new dwelling that has never been used as a personal residence by a taxpayer would clearly entitle petitioner to deductions associated with the production of the rental income, and I believe Congress intended *both* the old and new residence to be treated symmetrically.

Even more to the point, until today, the law has been well settled that when the property is leased under the varying circumstances outlined above at its fair market rental value in an arm's-length transaction, it is property held for the production of income as described in sections 212 and 167 and their predecessors. See *Briley v. United States*, 298 F.2d 161 (6th Cir. 1962); *Horrmann v. Commissioner*, 17 T.C. 903 (1951); *Robinson v. Commissioner*, 2 T.C. 305 (1943); see also sec.

1.212–1(h), Income Tax Regs. ("ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held by the taxpayer as rental property are deductible even though such property was formerly held by the taxpayer for use as a home"). Indeed, residential property has been considered to have been held for the production of income even when the owner has been unsuccessful in his efforts to rent the property. *Briley v. United States, supra; Horrmann v. Commissioner, supra; Robinson v. Commissioner, supra.*

The majority recognizes that renting one's former residence "at its fair market value would normally suggest that the taxpayer had the requisite profit objective." Yet the Court finds that since the rental activity was ancillary to sales efforts, it was not undertaken with the primary intention of making a profit, and cites *Jasionowski v. Commissioner*, 66 T.C. 312 (1976). At issue in *Jasionowski* was the distinction between the desire to profit through the receipt of rental income and the desire "to help a long-time friend who had become infirm and destitute." *Jasionowski v. Commissioner, supra* at 322. In helping a friend, petitioners rented at far less than half their own estimate of the fair market rental value. We concluded:

This voluntary acceptance of rent at an amount substantially below fair market value is a clear indication to us that petitioners' primary and dominant motivation was to help a long-time friend who had become infirm and destitute. Such a motive, while no doubt laudatory, should not be confused with an intention to make a profit. * * * [66 T.C. at 322.]

We have an entirely different case before us. Indeed, the parties stipulated that the property herein was rented for its fair market value and it is hard to see how anyone could reasonably demand or expect more. Under these circumstances, petitioners' ancillary desire to sell at the earliest practical time is not an important factor. See, e.g., *Johnson v. Commissioner*, 19 T.C. 93, 98 (1952) ("Depreciation is properly allowable where property is merely held for the production of income even though in the taxable year it has produced no income and is held for sale."); *Horrmann v. Commissioner, supra* at 907–908 ("when efforts are made to rent the property * * * , the property is then being held for the production of

income and this may be so even though * * * the property is at the same time offered for sale"). I see no reason why the case at bar does not fall within this established principal of law.

The taxpayers in the case at bar incurred expenses for hardware, plumbing, and lawn supplies, as well as other miscellaneous repairs, to maintain their home for tenants who paid fair market value rent. It is most extraordinary that the Court applies section 183 to the facts before us. Respondent admits that section 183 "is not customarily applied to the rental of real property when a fair rental is charged." Respondent's brief at 17. Nevertheless in arguing for the application of section 183, respondent cites legislative history showing Congress' intent to allow deductions for expenses such as depreciation, insurance, or maintenance, to the extent that income is derived from a non-profit-related activity, and thereby implies that section 183 provides the relief necessary to fairly tax petitioners' net income. On the contrary, however, section 183 affords no relief to petitioners here. Petitioners' income from the property consisted of $1,271 in 1977, and $2,717 in 1978. Interest and tax expenditures totaled $1,757.55 in 1977, and $5,632 in 1978. These expenses, deductible regardless of whether the house was rented for profit, exceed the income derived from the property, and thus preclude the deduction of repairs under section 183. To tax petitioners' income without deducting the expenses incurred to maintain property rented in an arm's-length transaction at its fair market value is a complete misapplication of section 183. I respectfully dissent.

GOFFE, CHABOT, and HAMBLEN, *JJ.*, agree with this dissent.