T.C. Memo. 2002-143


UNITED STATES TAX COURT


PHILIP A. SAUNDERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21534-97.                    Filed June 10, 2002.


Philip A. Saunders, pro se.

<u>Anita A. Gill</u>, for respondent.


MEMORANDUM OPINION


CARLUZZO, <u>Special Trial Judge</u>:  Respondent determined
deficiencies of $5,250 and $2,520, and section 6662[1] penalties of
$1,050 and $504, with respect to petitioner's 1993 and 1994
Federal income taxes, respectively.

_____

[1] Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the years in issue.  Rule
references are to the Tax Court Rules of Practice and Procedure.

For each year in issue, the issues for decision are: (1) Whether petitioner is entitled to various deductions claimed on a Schedule E, Supplemental Income and Loss; (2) whether petitioner is entitled to an itemized deduction for medical expenses; and (3) whether any underpayment of tax required to be shown on petitioner's income tax return is due to negligence.

Background

Some of the facts have been stipulated and are so found. During all relevant times, petitioner was married to Elizabeth A. Saunders. For each year in issue, petitioner filed his timely Federal income tax return as a married individual, filing separately. At the time the petition was filed, petitioner resided in Evendale, Ohio.

During the years in issue, petitioner, an attorney licensed in Massachusetts, was employed as a consultant for Arthur Andersen LLP; his spouse was employed as a school teacher.

In 1978, petitioner and his spouse purchased a house in Pepper Pike, Ohio (the Pepper Pike residence). Pepper Pike is a suburb of Cleveland, Ohio, where petitioner was employed at the time. From 1978 until at least December 1990, the exclusive use of the Pepper Pike residence was as a residence for petitioner, his spouse, and, until each moved out, their three children.

In April 1990, petitioner accepted employment in Cincinnati, Ohio, and, at least during the work week, lived in a rented apartment in the Cincinnati area. Because petitioner's spouse was then employed in the Cleveland area, she did not immediately move to Cincinnati with petitioner. Soon thereafter, however, she was offered employment in the Cincinnati area. In December 1990 or January 1991, she moved from the Pepper Pike residence, and petitioner moved from his apartment into a rented house in the Cincinnati area. On May 15, 1992, they purchased a new residence in Evendale, Ohio, a suburb of Cincinnati. The parties stipulated that petitioner and his spouse abandoned the Pepper Pike residence as their residence when petitioner's spouse moved to the Cincinnati area.

The Pepper Pike residence was listed for sale for several months during 1991, but no offers were received. A real estate agent suggested that they offer it for rent. In September 1991 the Pepper Pike residence was rented for a 6-month term, which term was extended for an additional 6 months. The rent charged and presumably received during the rental period was $1,850 per month. The Pepper Pike residence remained vacant from October 1992 until it was sold in April 1994. As best as can be determined from the record, the Pepper Pike residence was sold to the first person or persons who made an offer to buy it.

For the years during which the Pepper Pike residence was

rented (portions of 1991 and 1992) petitioner filed Federal income tax returns as a married individual filing a separate return.  With each return petitioner included a Schedule A, Itemized Deductions, on which he claimed deductions for home mortgage interest and real estate taxes attributable to the Pepper Pike residence.  Apparently, neither he nor his spouse reported any rental income attributable to the Pepper Pike residence during those years.

Petitioner's Federal income tax return for each year in issue, as well as the Federal income return of his spouse for each of those years, was prepared by petitioner.  Included with petitioner's return for each year is a Schedule E, Supplemental Income and Loss, on which the following items attributable to the Pepper Pike residence are reported:

|  | 1993 | 1994 |
|---|---|---|
| Income: | - 0 - | - 0 - |
| Expenses: | | |
| Advertising | $249.06 | $83.03 |
| Auto and travel | 420 | 140 |
| Cleaning and maintenance | 2,852.77 | 950.92 |
| Insurance | 446 | 149 |
| Mortgage interest paid to banks | 17,383.71 | 5,794.23 |
| Other interest | 161.52 | 53.84 |
| Repairs | 737.59 | 245.86 |
| Taxes | 3,074.46 | 1,024.82 |
| Utilities | 1,830.23 | 610.08 |
| Depreciation | 4,357.70 | 1,452.57 |
| Total expenses | 31,513.04 | 10,504.35 |

On each Schedule E, petitioner characterized the Pepper Pike residence as property "held for sale". On line 23 of each Schedule E, petitioner claimed the total expenses listed above, respectively, as a "Deductible rental real estate loss". (Emphasis added.)

For each year, petitioner computed the adjusted gross income reported on his return as follows:

|  | 1993 | 1994 |
|---|---|---|
| Wages from Arthur Andersen | $90,283.09 | $74,620.35 |
| State income tax refund | 80.10 | 1,877.75 |
| Rental real estate | (31,513.04) | (10,504.35) |
| Unemployment compensation | --- | 4,320.00 |
| Adjusted gross income | 58,850.15 | 70,313.75 |

The sale of the Pepper Pike residence is not reported on petitioner's 1994 return; it is reported on the 1994 return of petitioner's spouse as the sale of a principal residence subject to section 1034.

For each year in issue, petitioner computed his taxable income taking into account his election to itemize deductions. In this regard, his Federal income tax return for each of those years includes a Schedule A, Itemized Deductions. Among other items, on the Schedules A, petitioner claimed medical expense deductions computed as follows:

|                                | 1993        | 1994        |
|--------------------------------|-------------|-------------|
| Medical and dental expenses    | $9,903.06   | $10,075.89  |
| 7.5% of Adjusted gross income  | 4,413.76    | 5,273.53    |
| Medical expense deduction      | 5,489.30    | 4,802.36    |

Included in the deduction for each year are expenses for medical services, drugs, prescriptions, etc. for petitioner, his spouse, and other members of his family, paid for by checks drawn on a joint checking account maintained by petitioner and his spouse.  Most of the expenses relate to petitioner's spouse and were paid for by checks written by her.  Petitioner and his spouse were covered under separate employment-based medical insurance plans.  The medical expense deductions also include petitioner's costs for his insurance coverage, that is $1,008 and $875.68 for the years 1993 and 1994, respectively.  The 1994 medical expense deduction also includes Medicare taxes totaling $1,707 that were withheld from petitioner's and his spouse's wages.

Under her medical insurance plan, petitioner's spouse received insurance reimbursements of $3,824.20 and $3,772.20 for 1993 and 1994, respectively, with respect to medical expenses incurred by her.  These reimbursements are not taken into account in the medical expense deduction claimed by petitioner for either year.

In the notice of deficiency for each year in issue, respondent:  (1) Disallowed the "Deductible rental real estate

loss" claimed on the Schedule E because the Pepper Pike residence had not been "converted from personal use to use as an income-producing property"; (2) disallowed the medical expense deduction; and (3) determined that the underpayment of tax required to be shown on petitioner's return is due to negligence and imposed a section 6662 accuracy-related penalty. Other adjustments made in the notice of deficiency are not in dispute.

Discussion

1. "Rental real estate loss" Claimed on Schedule E

Normally, no deduction is allowed for the expenses incurred in maintaining a personal residence. Sec. 262(a); sec. 1.262-1(b)(3), Income Tax Regs. Similarly, any loss incurred in the sale of a personal residence is generally considered personal in nature and cannot be deducted. Sec. 1.262-1(b)(4), Income Tax Regs. However, an individual is entitled to deduct all the ordinary and necessary expenses paid or incurred during the taxable year "for the management, conservation, or maintenance of property held for the production of income". Sec. 212(2).

According to petitioner, by holding the Pepper Pike residence for rent and temporarily renting it for a portion of 1991 and 1992, the property was converted from property used for personal purposes to "property held for the production of income" during the years in issue. Respondent disagrees, and so do we.

Whether a former residence used for personal purposes has been converted in the hands of the same taxpayer to property held for the production of income is a question of fact to be resolved with reference to the surrounding facts and circumstances. Newcombe v. Commissioner, 54 T.C. 1298 (1970). Five factors have been identified by this Court and other Federal Courts in deciding previous cases involving similar questions; those factors include: (1) The length of time the house was occupied by the individual as his residence before placing it on the market for sale; (2) whether the individual permanently abandoned all further use of the house; (3) the character of the property (recreational or otherwise); (4) offers to rent; and (5) offers to sell. Grant v. Commissioner, 84 T.C. 809, 825 (1985), affd. without published opinion 800 F.2d 260 (4th Cir. 1986); see also Bolaris v. Commissioner, 776 F.2d 1428, 1433 (9th Cir. 1985), affg. in part and revg. in part on another ground 81 T.C. 840 (1983); Newcombe v. Commissioner, supra at 1300-1301. No one factor is determinative; rather, all the facts and circumstances must be considered. Grant v. Commissioner, supra at 825; Newcombe v. Commissioner, supra at 1300-1301.

Petitioner and his spouse purchased the Pepper Pike residence in 1978 to be used as their family residence. They did not originally acquire it for investment or income producing purposes. Following its purchase, petitioner and his spouse

lived in the Pepper Pike residence for many years, raised their family in it, and moved from it, only because of employment considerations.  At the time they moved from it, their intention was to sell the property as they were relocating out of the area. Their initial attempts to sell the property were frustrated, according to petitioner's testimony, by circumstances beyond petitioner's control; i.e., real estate market conditions at the time.  They received no offers to purchase the Pepper Pike residence while it was on the market for several months during 1991.  Their decision to rent the property was not made with the primary intention to profit from the rental, see Jasionowski v. Commissioner, 66 T.C. 312, 319 (1976), but to alleviate the financial burden of owning the Pepper Pike residence while at the same time living and working elsewhere.  Apparently, petitioner and his spouse sold the property at the first opportunity to do so.

To allow the Schedule E deductions as claimed in this case, we would have to ignore most of the relevant "facts and circumstances" and fashion a rule that allows for the conversion of personal use property to "property held for the production of income" merely because the property was rented for a temporary period.  We have declined to do so in past cases and likewise decline to do so in this case.  See, e.g., Murphy v. Commissioner, T.C. Memo. 1993-292 (holding that the temporary

lease on petitioners' former residence was ancillary to petitioners' efforts to sell the property as a result of petitioners' relocating to another area); Hudson v. Commissioner, T.C. Memo. 1981-175 (holding that a rental property was no longer considered as held out for rent in 1976 where taxpayer's last tenant moved out in September 1974).

Considering all of the facts and circumstances, we find that the Pepper Pike residence was not converted to "property held for the production of income" merely because it was rented on a temporary basis during years prior to 1993 and 1994. See Grant v. Commissioner, supra at 825-826 (rejecting taxpayer's argument that he was entitled to expenses under section 212 where he did not claim the expenses until after his former residence was no longer being rented and was only being held for sale). Consequently, petitioner is not entitled to the deductions claimed on the Schedule E for each of those years, and respondent's determinations in this regard are sustained.[2]

---

[2] On each Schedule E, petitioner reports a "Deductible rental real estate loss", a concept that contemplates the limitations on passive activity losses provided in sec. 469. Except for a glancing reference in respondent's trial memorandum, neither party addressed the application of that section to the deductions here in dispute. Even if the Pepper Pike residence was considered "property held for the production of income" because it was rented or held for rent, then it appears that any loss attributable to that rental activity, a passive activity for purposes of sec. 469, would be denied because petitioner did not file a joint return with his spouse for either year. Sec. 469(i)(5)(B).

2.  Medical Expense Deductions

Section 213(a) allows "as a deduction the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent * * *, to the extent that such expenses exceed 7.5 percent of adjusted gross income."

Petitioner now concedes that the medical expense deductions claimed on his returns are overstated to the extent that the insurance reimbursements received on account of his spouse's medical insurance plan have not been taken into account.  See, e.g., Marlett v. Commissioner, T.C. Memo. 1976-105.

Petitioner's concession on this point, in and of itself, eliminates petitioner's entitlement to a medical expense deduction for 1993.  Respondent's determination that he is not entitled to a medical expense deduction for that year is therefore sustained.

As to 1994, we find that petitioner's medical expense deduction for that year is also overstated to the extent that it includes amounts withheld for Medicare from his and his spouse's wages.  Medicare taxes do not qualify for deduction under section 213.  Sec. 1.213-1(e)(4)(i)(a)(3), Income Tax Regs.  Taking into account the increase to petitioner's 1994 adjusted gross income resulting from our holding regarding the Schedule E deductions, petitioner's concession with respect to the medical insurance

reimbursements, and our finding with respect to Medicare taxes, petitioner is not entitled to a medical expense deduction for 1994. Respondent's determination to this end is likewise sustained.[3]

3.  Negligence Penalty

Section 6662(a) imposes an accuracy-related penalty of 20 percent on any portion of an underpayment of tax that is attributable to negligence or disregard of rules or regulations. Section 6662(c) defines "negligence" to include any failure to make a reasonable attempt to comply with the Internal Revenue Code, and defines "disregard" to include any careless, reckless, or intentional disregard of rules or regulations. The negligence penalty does not apply to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect thereto. Sec. 6664(c)(1).

Petitioner prepared his Federal income tax return for each year in issue. In determining whether imposition of the negligence penalty is appropriate for those years, we take into account petitioner's background as an attorney and a consultant

---

[3] Because its resolution would have no tax effect, we do not address the dispute between the parties as to whether certain expenses incurred by petitioner's spouse for participation in a weight loss program qualify for deduction under sec. 213. See Rev. Rul. 2002-19, 2002-16 I.R.B. 778.

for Arthur Andersen LLP.  <u>Tippen v. Commissioner</u>, 104 T.C. 518, 534 (1995) (holding attorneys to a higher standard regarding the negligence penalty).  Even if we were to ignore his professional background, however, we would have little difficulty in sustaining respondent's imposition of the negligence penalty with respect to the portion of the deficiency for each year attributable to the overstated medical expense deduction claimed on petitioner's return.

Section 213 expressly provides, among other requirements, that a deduction is allowable for medical expenses "not compensated for by insurance".  Many of the medical expenses of petitioner's spouse that were included in the medical expense deduction claimed by petitioner for each year were, in fact, compensated for by insurance.  Petitioner now acknowledges his mistake in not taking the medical insurance reimbursements into account, but explains that he was unaware that his spouse received those reimbursements.  He further explains that the system that medical insurance companies use to pay and notify recipients of benefits is confusing and difficult to follow.

Neither explanation protects petitioner from the imposition of the negligence penalty.  Petitioner obviously was aware that his spouse was covered by an employment-based medical insurance plan.  Common knowledge suggests that many of the medical expenses of his spouse included in petitioner's medical expense

deductions might have been subject to reimbursement. Before petitioner included his spouse's medical expenses in his medical expenses deduction for each year he should have, if, in fact he did not, asked her about any reimbursements she might have received.

Petitioner's claim that the notification of benefits and reimbursement process is confusing does not explain petitioner's failure to account for all of the reimbursements. Respondent's imposition of the negligence penalty on the portion of the deficiency for each year attributable to petitioner's overstated medical expense deduction is sustained.[4]

We do not, however, sustain respondent's imposition of the penalty on that portion of each deficiency attributable to the Schedule E deductions. As noted above, allowance of those deductions is determined by the application of a facts and circumstances test. Taking into account the relevant factors previously discussed, reasonable minds could differ as to any conclusion reached.

---

[4] We also note that all but four of the checks from petitioner's and his spouse's joint checking account that were presented at trial were signed by petitioner's spouse and related to her personal medical expenses. Petitioner presented no evidence that these expenses were personally paid by him, and not his spouse. With this in mind and taking into account the fact that petitioner and his spouse filed separate returns for each year in issue, we consider it questionable that petitioner deducted all of the medical expenses paid by checks drawn from the joint checking account. See Higgins v. Commissioner, 16 T.C. 140, 142-144 (1951).

Based on the foregoing,

Decision will be

entered under Rule 155.